**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Jose A. Potes-Arias, being duly sworn, depose and state:

**Introduction**

1. I am a Special Agent with the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations ("HSI"), and have been since May 8, 2024. My responsibilities and duties include conducting investigations of alleged manufacturing, distribution, or possession of controlled substances (Title 21, United States Code, Section 841(a)(1)), importation of controlled substances (Title 21, United States Code, Section 952(a)), smuggling of goods into the United States (Title 18, United States Code, Section 545), and related offenses. I am an investigative or law enforcement officer of the United States who is empowered to conduct investigations of or to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

2. I am currently assigned as a Criminal Investigator with the Office of the Special Agent in Charge, San Juan, Puerto Rico. In this capacity, I investigate violations of federal criminal statutes, including offenses involving illegal firearm possession and trafficking.

3. I successfully completed the Criminal Investigator Training Program (CITP) and Homeland Security Investigations Special Agent Training (HSISAT) at the Federal Law Enforcement Training Center (FLETC), Glynco, Georgia. These comprehensive training programs provided instruction on criminal law, investigative techniques,

1

evidence handling, interviewing, and the identification and investigation of federal firearm offenses, such as but not limited to those prohibited by 18 U.S.C. § 922(g)(1) (felon in possession of a firearm) and 18 U.S.C. § 922(o) (illegal possession or transfer of machine guns).

4. My professional background includes prior employment as a State Law Enforcement Communications Officer with the Florida Highway Patrol, where I was responsible for examining criminal histories and managing critical law enforcement information within state and federal systems. Additionally, I served honorably for five years in the United States Marine Corps as an Infantry Squad Leader, attaining the rank of Sergeant. During my time in the Marine Corps, I gained extensive experience with a wide range of weapon systems, from small arms to crew-served weapons. This hands-on experience provided me with a deep understanding of how various firearms operate, how to effectively manipulate and maintain them, and the tactical application of different weapon systems in high-pressure situations. This knowledge has been invaluable in shaping my ability to assess, operate, and respond to firearm-related situations with precision and expertise.

5. Based on my training, education, and professional experience, I am familiar with the methods used by individuals prohibited from possessing firearms, as well as the illegal trafficking, modification, and possession of firearms. I am qualified and have the necessary expertise to investigate violations of federal firearm laws, specifically those defined under 18 U.S.C. § 922(o), and to provide credible information in support of affidavits for criminal investigations involving these offenses.

6. The facts and information contained in this affidavit are based upon my training and experience, participation in this investigation, personal knowledge and observations

2

made in the course of this investigation, as well as the observations of other agents and police officers involved in this investigation. All observations not personally made by me were relayed to me by the individuals who made them or are based on my review of records, documents, and other physical evidence obtained during the investigation.

7. This affidavit contains information necessary to support probable cause for a criminal complaint charging Bryan DIAZ-ORTIZ with violations of 18 U.S.C. § 922(o) (Unlawful Possession of a Machinegun). It is not intended to include every fact and matter observed by me or known to the United States.

**Facts Supporting Probable Cause**

8. On May 13, 2026, at approximately 8:00 AM, agents from the Puerto Rico Police Bureau (PRPB) Levittown Precinct contacted the Homeland Security Investigations Public Safety Group (HSI PSG) regarding a subject who had been arrested in Toa Baja.

9. According to the investigation conducted, including interviews and review of body worn camera footage, on May 11, 2026, at approximately 7:00 PM, PRPB agents were patrolling the Levittown area in a marked vehicle when they observed a dark-colored Jeep Compass bearing Puerto Rico license plate JFZ760 (hereinafter referred to as "target vehicle"). The driver, later identified as Bryan DIAZ-ORTIZ, was not wearing a seatbelt in violation of Puerto Rico Law 22. PRPB agents activated their lights and sirens and conducted a traffic stop at Levittown Boulevard, in front of the Paseo Rio Hondo condominium.

10. PRPB agents noted that DIAZ-ORTIZ appeared visibly nervous and repeatedly delayed handing over his driver's license and the registration for the target vehicle. DIAZ-ORTIZ informed PRPB agents that the target vehicle was not his, but belonged to his brother, who had allowed him to borrow it.

11. DIAZ-ORTIZ contacted his brother, whom he identified as the owner of the target vehicle, via telephone and placed the call on speakerphone. During the conversation, DIAZ-ORTIZ's brother informed him that the target vehicle's registration documents were located in the passenger glove box. The PRPB agent present heard the brother state this location over speakerphone. The PRPB agent then instructed DIAZ-ORTIZ to open the glove box and retrieve the target vehicle registration documents so that the agent could issue the traffic citation and allow DIAZ-ORTIZ to proceed.

12. DIAZ-ORTIZ repeatedly searched various areas of the target vehicle other than the passenger glove box, despite the agent's instructions. After several exchanges between DIAZ-ORTIZ and the PRPB agent, DIAZ-ORTIZ eventually opened the passenger glove box and, with his left hand, grabbed a pistol. The PRPB agent observed the pistol in plain view upon the glove box being opened and immediately drew his firearm and issued verbal commands to DIAZ-ORTIZ. The PRPB agent instructed DIAZ-ORTIZ to exit the vehicle with his hands raised.

13. DIAZ-ORTIZ let go of the firearm, exited the target vehicle, and fled on foot, resulting in a foot pursuit by PRPB agents. During the pursuit, DIAZ-ORTIZ tripped and fell, at which point the situation escalated to a use of force incident as agents attempted to restrain and handcuff DIAZ-ORTIZ. DIAZ-ORTIZ was subsequently placed under arrest. Following his arrest, DIAZ-ORTIZ voluntarily stated to the

PRPB agents that he was aware of what they were seeking and identified the location of the firearm as the passenger side glovebox.

14. PRPB agents requested the assistance of the PRPB Technical Services Unit. The target vehicle was sealed and towed to the PRPB Levittown precinct.

15. DIAZ-ORTIZ was later transported to the Centro de Servicios Medicos Levittown Hospital, after he exhibited symptoms of withdrawal, including vomiting, and stated to PRPB agents that he used heroin and fentanyl.

16. A state search warrant was submitted, approved, and executed on May 12, 2026 in the presence of DIAZ-ORTIZ, shortly after his return from the hospital. A search of the target vehicle yielded the following items:

- one (1) Glock model 27 pistol, .40 caliber, bearing serial number SCC236, fitted with an aftermarket modification that allows it to fire automatically (located in the passenger glove box);

- one (1) .40 caliber Glock magazine with a twenty-two (22) round capacity, found inside a cross-body bag on the passenger seat;

- one (1) .40 caliber Glock magazine with a nine (9) round capacity, found loaded inside the pistol;

- a total of twenty-seven (27) rounds of .40 caliber ammunition, consisting of one (1) round chambered in the pistol, eight (8) rounds inside the nine-round capacity magazine, and eighteen (18) rounds inside the twenty-two-round capacity magazine;

- one (1) iPhone cellular telephone, located in the passenger glove box;

- Bulk cash in the amount of two thousand four hundred forty-five dollars ($2,445) in United States currency, found inside the cross-body bag on the passenger seat;

- one (1) fentanyl plastic cylindrical capsule, located in the driver side door;

- three (3) white containers containing medical marijuana, labeled with the name Bryan DIAZ-ORTIZ.

17.    Below is a photograph depicting the evidence seized from the target vehicle, as well as images of the firearm and its modifications:

 

 

18. The Glock Model 27, recovered from the target vehicle, was black in color and chambered in 40cal. The firearm appeared to have been visibly altered with a transparent-colored chip, which is used to enable the firearm to fire in a fully automatic mode. The modification is noticeable given the contrast in color and material.

19. Subsequent records checks revealed that the firearm was listed as stolen.

20. A functions check was conducted by TFO Edwin Guzman, and HSI Special Agent Jose Potes-Arias. During the check, it was observed that the trigger would not reset after pulling the slide to the rear, which is inconsistent with the normal operation of a semi-automatic pistol and preliminarily shows that the firearm is capable of firing automatically more than one shot with a single function of the trigger.

21. The intervening PRPB agent recorded the entirety of the intervention utilizing a body-worn camera, and the footage is available for review. All items recovered were processed pursuant to the state search warrant under the supervision of the PRPB Technical Services Unit in the presence of DIAZ-ORTIZ.

22. On May 13, 2026, HSI PSG investigators were contacted to consult on the case at the federal level. HSI PSG investigators approached DIAZ-ORTIZ who had his Miranda rights formally read and explained to him in his native language of Spanish. DIAZ-ORTIZ elected to waive his rights and signed ICE Form 73-025, which documents the waiver and explanation of rights in Spanish. DIAZ-ORTIZ subsequently provided the following statements during his interview with HSI:

   a) DIAZ-ORTIZ indicated that he felt well despite withdrawal symptoms;

   b) DIAZ-ORTIZ provided biographical information;

   c) DIAZ-ORTIZ stated he understood his rights;

   d) DIAZ-ORTIZ affirmed, at various points during the interview, that the firearm

7

was his.

e) DIAZ-ORTIZ indicated that he had purchased the firearm approximately one week prior for personal protection, citing previous incidents in which he had been shot and assaulted.

f) DIAZ-ORTIZ stated that he did not know the identity of the individual who sold him the firearm, describing the seller only as another addict, whom he referred to as a "Tecato" from the Virgilio Davila public housing project in Bayamon.

g) DIAZ-ORTIZ explained that he went to the drug point in Virgilio Davila to purchase narcotics and inquired about the availability of firearms. The unidentified seller informed DIAZ-ORTIZ that a Glock .40 caliber pistol was available for $1,200.00 USD.

h) DIAZ-ORTIZ stated that he was aware the rear portion of the pistol was visibly different than usual, specifically referencing an alteration to the chip on the backplate of the firearm.

i) DIAZ-ORTIZ further stated that the seller informed him the weapon was "altered" and capable of automatic fire.

j) DIAZ-ORTIZ stated that he expressed approval of the alteration to the seller and purchased the firearm in its modified condition for $1,200.00 USD but had not personally fired it.

k) DIAZ-ORTIZ confirmed that he purchased the pistol in its existing state.

23. HSI PSG investigators conducted individual interviews with the registered owner of the firearm, the current owner of the vehicle (identified as DIAZ-ORTIZ's brother), and the registered owner of the vehicle.

24. DIAZ-ORTIZ's brother stated that DIAZ-ORTIZ had requested to borrow the vehicle

to pick up a friend, and that there was no firearm present in the vehicle when he provided it to DIAZ-ORTIZ. The registered owner of the vehicle also confirmed that he was unaware of any firearm inside the vehicle at the time of sale.

### Conclusion

25.    Based on the facts contained herein, I submit there is probable cause to believe that Bryan DIAZ-ORTIZ has committed the following offenses: 18 U.S.C. § 922(o) (Unlawful Possession of a Machinegun).

I hereby declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge.

JOSE A POTES ARIAS
Digitally signed by JOSE A POTES ARIAS
Date: 2026.05.13 18:21:01 -04'00'

Jose A. Potes-Arias
Special Agent
U.S. Homeland Security Investigations

Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at 7:26 p.m. on the 13th day of May, 2026.

Marcos E. López
Magistrate Judge
United States District Court
District of Puerto Rico

9